[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION IN LIMINE #2 RE: ZIPP DEPOSITION EVIDENCE
The plaintiffs, Jacob and Chana Pinson, have moved this Court inlimine to preclude the defendant, Citizens Bank of Connecticut ("Citizens Bank"), from introducing into evidence or otherwise relying upon any portion of the transcript of the deposition of one Stephen Zipp, which was taken on March 25, 2002 before a notary public/certified court reporter in the State of Nevada. In the deposition, Mr. Zipp testified, inter alia, that he was the payee on a check in the amount of $75,528.46 which was drawn on the account of Rafael Victor, M.D. and Phyllis M. Victor with Citibank, N.A. Br. 37, 1220 Avenue J, Brooklyn N.Y. 11230, that he never received or ever knew of the check before the present lawsuit was commenced, that he never signed the check, authorized anyone else to sign it for him, or received any value for it, and that the signature of his name on the back of the check is a forgery.
On the basis of this testimony, the defendant intends to prove at trial that it paid the subject check over a forged endorsement when plaintiff Jacob Pinson presented the check for payment. It thus will claim either
that it had the right to deduct the amount of the check from the Pinsons' Citizens Bank account when it learned of the forgery or that it now has the right to set off the amount of the check from any damages awarded to the plaintiffs herein on the ground that Jacob Pinson breached his warranty that all signatures on the check were authentic and authorized when he presented the check, over his own endorsement, for payment. See General Statutes § 42a-3-416 (a) (2).
The plaintiffs seek to preclude the deposition testimony of Mr. Zipp on three grounds. First, they claim that at the deposition they were denied the opportunity to conduct an effective cross-examination of Mr. Zipp "because of [Zipp's] repeated refusal to testify concerning matters of relevance and significance." Plaintiffs' Motion in Limine #2 Re: Zipp Deposition Evidence ("Motion"), pp. 2-3. They argue, in particular, that they were prevented from cross-examining the witness as to why the CT Page 12448 subject check may have been issued in his name. This issue, claim the plaintiffs, is significant because the witness disclaimed any knowledge of or dealings with the drawer of the check, Dr. Rafael Victor, before the check was issued, and stated further that he had "no idea in the world" why the drawer would have paid him the sum of $75,528.46, for which the check was made out.
The defendants respond to this claim by noting that the plaintiffs never sought an order from an appropriate Nevada court or judge, either while the deposition was in progress or thereafter, to compel the witness to answer the questions he refused to answer. Accordingly, it claims that the plaintiffs have waived any objection they might otherwise have had to the use of the deposition at trial, for although the witness was indeed uncooperative, refusing to answer questions about several matters that may in some way have related to the issuance of the subject check, the plaintiffs failed to use all reasonable means available to them to overcome the witness's resistance to their efforts to cross-examine him.
The plaintiffs acknowledge that they never sought a court order to compel the witness to consider their cross-examination questions. Hence, though their lawyer has stated that he was on a very tight schedule while he and defense counsel were in Nevada to conduct the witness's deposition, the plaintiffs have offered no reason why, in the six months after the deposition, they made no effort to obtain such an order.
Against this background, the Court agrees with the defendant that, although the witness was indeed uncooperative, the plaintiffs are not entitled on that basis to the exclusion of his deposition testimony. The plaintiffs were not denied the opportunity to cross-examine the witness effectively. Instead, they failed to pursue that opportunity by filing a motion to compel.
The plaintiffs' second and third arguments as to why the deposition testimony of Stephen Zipp should not be admitted into evidence are related. The second is that the Zipp deposition fails to establish the necessary foundation for the central proposition that the deponent is the same Stephen Zipp who was the payee on the check that is the subject of this action. Motion, p. 3. The third is that, to the extent there is "any testimony by Zipp connecting him to the [subject] check, all such testimony [is] inadmissable hearsay." Id. In support of these claims, the plaintiffs have supplied the Court with an itemized list of all testimony by the witness that they claim to be inadmissible on hearsay and other grounds, and have made written and oral arguments as to why the remaining portions of the deposition are inadequate to establish that the witness was the intended payee of the subject check. CT Page 12449
The defendants respond by arguing that the entire deposition is admissible because it is not hearsay and/or was not timely objected to at the deposition, and in any event, that there is enough admissible evidence in the deposition to establish that the deponent is in fact the intended payee of the subject check.
The Court has issued a separate ruling on the plaintiffs' 43 objections to the evidentiary admissibility of portions of the challenged deposition. For the following reasons, it concludes that the admissible portion of the deposition does not establish, or afford a reasonable basis for inferring, that the deponent was the intended payee of the subject check, or thus that the endorsement of his name on the back of that check is a forged signature.
The deponent, who identified himself as Stephen Zipp, with a business address of 945A Spice Island Drive, Sparks, Nevada,[1] testified that he is the person who executed the affidavit of forgery that led Citicorp, as the drawee and payor of the subject check, to seek reimbursement for the check from Citizens Bank, and Citizens Bank, in turn, to deduct the amount of the check unilaterally from the plaintiffs' Citizens Bank account. However, though the affidavit, which itself is inadmissible hearsay, states that the check was issued to him as "payment of [a] loan," he testified that he had never made a loan to Dr. Victor, the drawer of the check, had never met Dr. Victor or had any business dealings with him, and had no expectation of receiving a check from him in March of 1998, in any amount or for any purpose.
In fact, the witness further stated that he did not even learn of the check until after it had been paid by Citizens Bank and transferred for final payment to Citicorp. Then, moreover, all he could say about it was that he had not received it or signed it, and thus that the signature of "Stephen Zipp" on the back of it was not his own signature. He could not state, and did not attempt to state, why the check was issued; he thus could not state, and did not state, that the check was actually issued to him. Indeed, the true state of his knowledge as to why the check was issued is best captured in the following interchange with plaintiffs' counsel at the deposition:
 Q. Separate and apart from the check that has been marked as an exhibit, do you know Dr. Victor?
A. No.
Q. Have you ever met Dr. Victor? CT Page 12450
A. No.
Q. Have you ever spoken to Dr. Victor?
A. I think in reference to the check.
 Q. When did you first speak to Dr. Victor in reference to the check?
A. When I found out about the check.
Q. Sir, did you ever lend money to Dr. Victor?
A. No.
 Q. The check is in the amount of $75,528.46. Why was Dr. Victor paying you that sum?
A. I have no idea in the world.
Zipp Deposition Transcript, p. 11.
The closest that the witness would ever come to suggesting a basis for inferring that he was the intended payee of the subject check was in the following colloquy with plaintiffs' counsel:
 Q. The check purports to be dated in March of 1998. In March of 1998, were you expecting the payment of $75,528.46 from someone?
 A. I was expecting money back, but that amount has no significance to me whatsoever.
Q. From whom were you expecting money back?
A. From somebody else that we gave money to.
Q. Who?
 A. We have a settlement, and I don't know if I'm allowed to — there is a thing in the settlement where you're not allowed to talk about it.
CT Page 12451
Zipp Deposition Transcript, p. 12.
This colloquy, however, actually tends to disestablish any connection between the deponent's asserted expectation of getting money back in March of 1998 and the contemporaneous issuance of Dr. Victor's check. Not only is the drawer, Dr. Victor, not the person to whom money was given or from whom it was expected by the witness, but the amount of the check had "no significance to [the witness] whatsoever" with respect to the amount of the expected return. Hence, any claimed connection between the check and the witness's unexplained expectation of repayment from an unrelated third party in a different amount would be speculative at best.
In fact, the only tie-in between the check and any transaction with which the witness was personally involved came in the following colloquy between the witness and plaintiffs' counsel towards the end of the deposition:
 Q: As you sit here today, you don't know why you were entitled to receive $75,528.46? That's your testimony?
A: There was a transaction with another party.
Q: What was the name of the party?
 A: It's the one I can't disclose. You mentioned one of the names of the party already.
Q: Mr. Drizin?
 A: Drizin, okay? And besides that, I can't disclose anything. But somehow it got worked around where one person owed somebody else money, owed somebody else money, from what I understand, and that's how, supposedly this check was coming back to me.
 MR. WEINSTEIN: I move to strike that portion of the answer as non responsive.
Zipp Deposition Transcript, p. 19.
There is no question that the final portion of the witness's final answer was indeed non responsive to counsel's question. It is therefore not admissible evidence. On the other hand, the inadmissible prtion of the witness's answer sheds critical light on the witness's only basis for stating that the $75,528.46 check from Dr. Victor, a man he did not know CT Page 12452 and had never previously met or dealt with, was actually intended for him. That basis, of course, is hearsay, for the witness, by his words, could only say that:
 Somehow it got worked around where one person owed somebody else money, owed somebody else money, from what I understand, and that's how, supposedly, this check was coming back to me.
Id. This isn't a statement based on personal knowledge. Instead, it is a recounting by the witness of what another person told him, and thus of what he now "understand[s]" to be true, as to why and how, "supposedly," Dr. Victor's check was issued to him. In light of that answer, the witness's preceding answers are also inadmissible hearsay, for they state facts which the witness knows only because others have told him that they are true. Since the witness cannot testify about those facts based on personal knowledge, his testimony about them is hearsay, and must not be admitted.
Absent any admissible evidence in the witness's deposition that he is the intended payee of the subject check, there is no foundation for his testimony that the signature on the back of the check is a forgery, as opposed to the proper signature of a different Stephen Zipp. Hence, unless the defendant can offer the testimony of another witness to establish that the deponent was in fact the intended payee, the deposition testimony of the deponent must be excluded as evidence in this case.
It is so ORDERED this 30th day of September, 2002.
BY THE COURT
 ___________________, J. Michael R. Sheldon